**WO**                              NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna Palermo, | No. CV-15-02553-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Donna Palermo's Application for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 18, "Def.'s Br."), and Plaintiff's Reply (Doc. 24, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 14, R.) and now reverses the Administrative Law Judge's decision (R. at 16-31) as upheld by the Appeals Council (R. at 1-7).

**I.     BACKGROUND**

Plaintiff filed applications for Disability Insurance and Supplemental Security Income Benefits on August 8, 2011, for a period beginning March 5, 2009. (Doc. 14, R. at 216-33.) Plaintiff's claims were denied initially on August 1, 2012 (R. at 88-89), and on reconsideration on March 5, 2013 (R. at 90-117). Plaintiff then testified via video

conference at a hearing held before an Administrative Law Judge ("ALJ") on October 17, 2013. (R. at 41-87.) On February 14, 2014, the ALJ denied Plaintiff's claims. (R. at 16-31.) The present appeal followed.

The Court has reviewed each page of the medical evidence in its entirety. As such, it is unnecessary to provide a full or abridged recitation here. The record is voluminous and the pertinent medical evidence will be discussed in addressing the issues raised by the parties. The Court notes that the ALJ found that Plaintiff has severe impairments of fibromyalgia, disc herniation of the lumbar spine, degenerative joint disease of the bilateral hips, left knee, and bilateral thumbs, obesity, bipolar disorder, and posttraumatic stress disorder (R. at 19) after considering medical records and opinions primarily from treating physician Dr. Devin Mikles,[1] treating psychiatrist Dr. Francis S. Gagliardi, state agency examining physician Dr. Lucia McPhee, state agency reviewing physician Dr. Clarence Ballard, examining psychiatrist Dr. Brent B. Geary, state agency reviewing psychologist Dr. Christal Janssen, and state agency reviewing physician Dr. Evette Burdich.

## II.     ANALYSIS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a

---

[1] Throughout the ALJ's opinion, Plaintiff's primary physician's name is apparently misspelled as "Mickles." (R. at 26.) While Defendant corrected this in its filing, Plaintiff vacillates between proper and improper spelling throughout her briefs (*compare* Pl.'s Br. at 10, *with* Pl.'s Br. at 11). Given the variation, the Court will use the spelling consistent with the entirety of the medical record. (*E.g.*, R. at 1034-42.)

"specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

Plaintiff alleges two primary ALJ errors: (1) improperly rejecting or discounting the medical opinions of treating physicians, and (2) improperly rejecting Plaintiff's reported symptoms and the observations of her friends. (Pl.'s Br. at 9-10.)

### A. The ALJ Erred in Weighing the Examining Physicians' Opinions

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and quotation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* Even when contradicted, a treating physician's opinion is still owed deference and may be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 633).

#### 1. Dr. Devin Mikles

The ALJ discounted Dr. Mikles's opinion, giving it little weight, because she found it inconsistent with the medical record. (R. at 26.) Plaintiff argues this was improper as the ALJ failed to suitably cite to the record or explain the alleged discrepancies. (Pl.'s Br. at 10-15.) Defendant responds that the ALJ supplied sufficient citation. (Def.'s Br. at 3-5.) The Court disagrees with Defendant.

Broadly, the Court does not find the ALJ's reasons for rejecting Dr. Mikles's opinion are specific and legitimate and supported by substantial evidence. The ALJ's lack of specificity in identifying what opinion is inconsistent with which portion of the medical record belies any claim that specific and legitimate reasons were given. The ALJ's bare assertion that Dr. Mikles's opinion was not sufficiently supported by the treatment record or objective medical findings is not a proper reason, by itself, for rejection. *See Embrey v. Bowen*, 849 F.2d 418, 421–23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Although the ALJ provided a few examples, she failed to tether those examples to specific portions of the record. (*See* R. at 26-27.) Without such

1 specificity, it is impractical—if not impossible—for the Court to determine whether the
2 ALJ's reasoning can be demonstrated by substantial evidence. Accordingly, the Court
3 finds inadequate reasoning was supplied. In its place, the ALJ provided broad statements
4 which are often at odds with the medical record, and as addressed below.

### a. The ALJ's Improper Reasoning

Where the ALJ has supplied specific examples, they are unavailing. For instance, the ALJ noted that Plaintiff's examination revealed "little more than tenderness related to fibromyalgia and degenerative changes in her back and joints and intermittently reduced range of motion." (Def.'s Br. at 4.) However, the records show far more than "tenderness." There is ample evidence to support Dr. Mikles's opinion, and the ALJ fails to illustrate how that evidence supports another conclusion. (*See, e.g.*, R. at 453-55, 524-25, 607, 792-96, 798, 800, 802, 807-09, 812, 827, 939-40, 945, 975-77, 1009, 1028, 1235, 1243-46, 1288, 1293-1302, 1307-19, 1321-25, 1452.) Similarly, the ALJ observed that Plaintiff's gait was "usually classified as normal and she just once seemed somewhat uncomfortable while seated." (Def.'s Br. at 4.) The assessment of Plaintiff's gait, however, varied and is not a direct symptom or limitation related to fibromyalgia. The ALJ also claimed a lack of a range of motion abnormalities—a symptom not associated with fibromyalgia—conflicted with Dr. Mikles's stated postural limitations. (R. at 27.) The ALJ does not cite to any medical opinion—whether that of a treating, examining, or reviewing physician—that suggests that such symptoms or effects should be present given Plaintiff's allegations. Without any such citations, the Court can only conclude that the ALJ substituted her own opinion for that of a medical professional, which is improper. *See, e.g.*, *Lapierre-Grut v. Astrue*, 382 Fed. App'x 662, 665 (9th Cir. 2010).

As to the ALJ's assessment that Plaintiff did not demonstrate the need to sit or change positions during her hearing, which would reflect Dr. Mikles's opinion, Plaintiff's hearing was not an eight-hour workday in a competitive environment on a sustained basis. As noted by the Ninth Circuit, the "sit and squirm" jurisprudence "has been condemned," *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985), and the denial of

- 5 -

Social Security benefits cannot be based on an ALJ's observations that a claimant sat comfortably during an administrative hearing when the claimant's statements to the contrary are supported by substantial evidence. *Id.* Moreover, Dr. Mikles often noted visible pain (R. at 1010, 1013, 1241, 1244, 1247, 1450) and Plaintiff had to stand up during the hearing (R. at 64). The ALJ failed to provide an explanation of how these findings contradicted Dr. Mikles's opinion.

The Court also discards the ALJ's conclusion that Dr. Mikles's opinion was inconsistent with Plaintiff's activities of daily living. Again, the ALJ failed to cite to any specific activity that conflicts with Dr. Mikles's opinion. Defendant argues that Dr. Mikles's opinion that Plaintiff can "sit, stand and walk less than 4 hours total" is contravened by Plaintiff's work as a "companion once a week for 5-6 hours" and caring "for an autistic child once a week for 4 hours," which they argue indicates "she has been regularly appearing at her jobs." (Def.'s Br. at 5; R. at 27.) Further, Defendant and the ALJ cite to Plaintiff's participation in a women's AA group at a jail 1-2 times per month, care of a dog, leisure walks, swims, and some household chores as reasons to discredit Dr. Mikles's estimation. (Def.'s Br. at 5.) However, neither the ALJ nor Defendant has explained how any of these activities require Plaintiff to sit, stand, and walk for more than four hours. Indeed, Plaintiff's testimony and treatment notes show that her activities are punctuated by rest and last less than four hours, and Defendant points to no contradicting evidence. (R. at 47-51, 70, 1114-15, 1439.) Although Plaintiff's companion work lasts five-to-six hours, this activity is completed in a home setting where Plaintiff's need for rest, change of position, and leg repose is specifically accommodated. (*See* R. at 47, 60, 70, 71.) Moreover, none of these activities demonstrate that Plaintiff is able to maintain a work schedule or otherwise contravene Dr. Mikles's opinion.

To the degree the ALJ discounted Dr. Mikles's opinion due to contradictions found in other opinions, the ALJ also failed to properly educe those incongruities. In stating that she was granting greater weight to the opinions of Dr. McPhee's over that of Dr. Mikles's, the ALJ did not cite to contradicting statements in the two opinions. (R. at

25.) Instead, the ALJ thought that Plaintiff's report of limitation conflicted with Dr. McPhee's opinion. (R. at 25.) Similarly confounding, while the ALJ gave little weight to Dr. Ballard's opinion, which included that Plaintiff could stand and walk for six hours in an eight hour day, the ALJ granted significant weight to Dr. McPhee's opinion, which included the same. (R. at 25-26.) Regardless, the ALJ has cited to no reason why Dr. McPhee's opinion—or any other of the physician opinions—serves as adequate reasoning to discount Dr. Mikles's diagnosis.

### b.    Defendant's Justification

In various instances, Defendant has attempted to fill the gaps where the ALJ's opinion lacks the requisite specificity to grant less weight to Dr. Mikles's opinion. For example, Defendant notes that Dr. Mikles recorded that IV therapy injections had been "quite helpful" in treating fatigue and fibromyalgia. (Def.'s Br. at 4.) This observation is not present in the ALJ's opinion and therefore the Court cannot know whether it was relied on by the ALJ. As such, Defendant cannot assert that it provides specific and legitimate reasoning or substantial evidence. Long-standing principles of administrative law require the Court to review the ALJ's decision based on the factual findings and reasoning offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the ALJ may have thought. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("[T]he government identifies other alleged inconsistencies between Claimant's hearing testimony and her reported daily activities, such as knitting and lace work. But the ALJ did not identify those inconsistencies."); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases . . . ."). Like in *Burrell*, "we are constrained to review the

reasons the ALJ asserts." *Burrell,* 775 F.3d at 1138. "Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts." *Id.* Defendant's line of reasoning is not apparent from the ALJ's decision. Even if Defendant has accurately captured the ALJ's thinking, it is the ALJ that must explain her decision, not this Court. Accordingly, the Defendant's attempt to rationalize the ALJ's decision on Dr. Mikles's opinion *post hoc* is unavailing.

### c. Other Errors

The Court also finds error in the ALJ's rejection of Dr. Mikles's opinion on Plaintiff's mental limitations. (*See* R. at 1353-54.) Like the ALJ's rejection of Dr. Mikles's other opinions, she provides little citation to support contradicting evidence. (*See* R. at 27.) Moreover, Defendant argues that the rejection of Dr. Mikles's psychiatric assessments is proper because he is a primary care physician, not a psychiatric specialist. (Def.'s Br. at 7.) Despite this, Dr. Mikles's opinion must still be afforded some weight and deference. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (treating physician's opinion may not be discredited on the ground that he is not a psychiatrist). As Defendant's own regulations recognize, treating physicians like Dr. Mikles bring a "unique perspective to the medical evidence." 20 C.F.R. § 404.1527(d)(2).

The ALJ also criticized Dr. Mikles's opinion because it was on an issue reserved for determination by the Commissioner (R. at 27.) However, Dr. Mikles's conclusions regarding Plaintiff's abilities in spite of impairments are not a determination of disability. Even if they were, that is not, in itself, a legitimate reason for rejecting his entire opinion. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (explaining that the Commissioner is not relieved of the obligation to state specific and legitimate reasons for rejecting a treating physician's opinion even if the treating physician rendered an opinion on the ultimate issue of disability); *Embrey*, 849 F.2d at 421–22.

Finally, the ALJ erred in discrediting Dr. Mikles's opinion because it was "based largely on [Plaintiff's] statements regarding her abilities rather than his own

observations." (*See* R. at 27.) It is improper for an ALJ to discredit a physician's opinion because the physician relied in part on a claimant's subjective complaints when the physician did not personally cast any doubt on the validity of those complaints. *Regenitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1300 (9th Cir. 1998). As the ALJ acknowledged, Dr. Mikles has treated Plaintiff for "several years." (R. at 27.) Never during any of those visits did Dr. Mikles suggest that Plaintiff was "malingering or deceptive." *Regenitter*, 166 F.3d at 1300. As such, the ALJ had no basis for substituting her own opinion for that of Plaintiff's treating physician.

In sum, the Court finds that none of the ALJ's reasons for rejecting Dr. Mikles's opinion were specific and legitimate or supported by substantial evidence, and any attempt by Defendant to provide *post hoc* rationale cannot remedy this error. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (when rejecting the opinion of a treating physician, the ALJ can meet his/her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings") (internal citation and quotation omitted).[2] Accordingly, the ALJ erred in giving Dr. Mikles's opinion less weight.

### 2.     Dr. Francis S. Gagliardi

As with Dr. Mikles's opinion, Plaintiff argues that the ALJ provided insufficient citation and reasoning for assigning Dr. Gagliardi's opinion "little weight." (Pl.'s Br. at 15-18.) Defendant again responds that adequate citation is present in the ALJ's opinion. (Def.'s Br. at 5-6.) For the reasons that follow, the Court agrees with Plaintiff.

The ALJ again acknowledged that Dr. Gagliardi treated the Plaintiff "many times" but rejected his opinion on the grounds that it was inconsistent with the medical evidence. (R. at 28.) While Dr. Gagliardi found that Plaintiff has a moderately severe limitation to

---

[2] The Court notes that it is far from clear that the ALJ's cited contradictory sources—the medical record and Plaintiff's reported activities—do in fact controvert Dr. Mikles's opinion at all. Accordingly, the ALJ would be required to provide clear and convincing reasons, rather than merely specific and legitimate ones. It is clear, though, that Dr. Mickles' opinion is at least partially contradicted by other opinions. Nonetheless, the ALJ in further proceedings should be cognizant of this discrepancy.

respond to customary work procedures, the ALJ stated that Plaintiff's mental health examinations do not corroborate that claim and that Plaintiff's daily activities, hobbies, interactions with others, and grooming contradict Dr. Gagliardi's opinion. (R. at 28-29.) The ALJ failed, however, to provide specific citations or more detailed description of which activities or medical evidence contradicted which portion of Dr. Gagliardi's opinion. Simply stating that no evidence supports the opinion is not enough, nor is listing activities without further explanation. While Defendant cites to Plaintiff's mental status examinations, consultation examination, and the notation that Plaintiff was "fairly stable" when medicated, (Def.'s Br. at 6), these were not cited by the ALJ and it is unclear how these contradict Dr. Gagliardi's opinion. (*See* R. at 28-29.) Further, the ALJ stated that there was no objective evidence regarding Dr. Gagliardi's opinion on Plaintiff's stress, but there are multiple findings of psychological exacerbation when stressed and other similar findings. (*See, e.g.*, R. at 514-16, 520-23, 712-13, 828-29, 1458.) Similarly, the ALJ stated that Dr. Gagliardi's opinion on social limitations was contradicted by the evidence that Plaintiff was well groomed and maintained personal habits. However, Dr. Gagliardi only found *mild* deterioration of such habits and there are ample notations in the record consistent with those findings. (*See, e.g.*, R. at 336, 514-16, 1075-76, 1154-55, 1220-21.) Moreover, these findings were wholly consistent with other opinions, including those which the ALJ gave "significant weight" (R. at 27-28) and Dr. Mikles's improperly rejected assessment (R. at 29.) The ALJ also found no evidence of psychomotor slowing, but all examinations note slowed pace. (R. at 790-91, 911, 1003.) Ultimately, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Gagliardi's opinion, and to sufficiently substantiate the reasons she gave.

### B. The ALJ Erred in Analyzing Plaintiff's Credibility and Testimony

Plaintiff also argues that the ALJ erred in rejecting Plaintiff's testimony as only partially credible without citing "clear and convincing reasons" for doing so and supporting that finding with substantial evidence to explain what undermined the testimony. (Pl.'s Br. at 20.) Defendant responds that the inconsistencies between

1  Plaintiff's allegations and the medical evidence, conservative treatment, and daily
2  activities provide adequate reasoning and evidence to find Plaintiff only partially
3  credible. (Def.'s Br. at 7.) Plaintiff also faults the ALJ's discounting of lay witness
4  testimony for the same reason. (Pl.'s Br. at 21.) On both points, the Court agrees with
5  Plaintiff.

### 1. Plaintiff's Testimony

When evaluating a claimant's pain testimony where the claimant has produced objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id*. The ALJ made no finding of malingering and appears to have concluded that Plaintiff's impairments may reasonably be expected to cause her alleged symptoms. (*See* R. at 23.) Accordingly, the ALJ was obligated to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Burch*, 400 F.3d at 680. The Court acknowledges that the ALJ cites specific evidence in the record and does give some weight to Plaintiff's pain testimony. But the Court does not find that the ALJ provides clear and convincing reasons for finding Plaintiff not fully credible, nor does she adequately cite which testimony was rejected or what contradictions substantiated that rejection.

The ALJ found that Plaintiff's testimony is contradicted by the fact that her physical examinations were "largely normal"—other than "persistent tender points and carpometacarpal joint deformities, as well as intermittent pain in lumbar region, bilateral hips, and left knee." (R. at 24.) Of course, all claimants' examinations would be largely normal if discounting their medical conditions. Moreover, this portion of the ALJ opinion apparently fails to consider some of Plaintiff's most pertinent diagnoses and the symptoms thereof—fibromyalgia and mental illness—further suggesting that Plaintiff's testimony is not inconsistent with the medical record. (R. at 24.) The ALJ cannot reject

1 Plaintiff's subjective complaints solely because the medical evidence only partially
2 supports her complaints. *See Burch*, 400 F.3d at 680. The medical record may be open to
3 interpretation as to Plaintiff's pain symptoms. But this is almost always the case, as pain
4 is subjective and the "amount of pain caused by a given physical impairment can vary
5 greatly from individual to individual." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.
6 1996). This is particularly true with some of Plaintiff's diagnoses. *See, e.g.*, *Benecke v.*
7 *Barnhart*, 379 F.3d 587 (9th Cir. 2004). Although credibility determinations are the
8 province of the ALJ, the Court finds that the ALJ here did not provide adequate reasoning
9 for rejecting Plaintiff's testimony vis-a-vis the medical record.

Plaintiff also argues that the ALJ's statement that "conservative care impugns symptom credibility" is also error. (Pl.'s Br. at 22-23; Reply at 13.) The Court agrees. The ALJ does not provide any support for this finding and fails to cite any evidence that Plaintiff declined to comply with any recommended treatment by a physician. Even were such refusals present in the ALJ's opinion, only in some circumstances can refusal to comply with recommended treatment indicate that a claimant is not as impaired as alleged. If an impairment does not lend itself to aggressive treatment, however, faulting a claimant for not obtaining aggressive treatment is not logical. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective"). The record demonstrates that Plaintiff has been prescribed many medications to treat her impairments and symptoms. (*See, e.g.*, R. at 1220-21, 1348-50, 1069-70.) Further, the ALJ's statement that Plaintiff's pain treatment consists largely of "oral pain medications" (R. at 24) does not, by itself, connote conservative care, particularly when such medication includes oxycodone. (R. at 1069-70.) Plaintiff also detailed 17 separate, invasive injection procedures, of which the ALJ only cited five.[3] (*Compare* R. at 24 *with* Pl.'s Br. at 22-23 (citing R. at 600, 607, 648, 524-25, 823, 827, 1028, 1243-48, 1287-92,

---

[3] The ALJ seems to cumulatively acknowledge up to eight total injections, which nonetheless significantly discounts the number Plaintiff presents.

1293-1310, 1311-14, 1321-25, 1452-53).) This treatment plan is entirely consistent with the conclusion that Plaintiff's management is not the most conservative, even where her impairment may not lend itself to more aggressive treatment.

Similarly, the ALJ improperly rejected Plaintiff's testimony on the grounds it was at odds with her reported daily activities. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (quotation omitted). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, 495 F.3d at 639. The ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* at 639 (quotation omitted). However, the ALJ cited the fact that Plaintiff took part in daily activities at home and worked about ten hours a week as a caregiver as contradictory to Plaintiff's pain testimony. (R. at 24). The ALJ did not make any precise finding that any of Plaintiff's specific activities were not commensurate with her symptom testimony and did not make any finding that her activities of daily living were transferable to a work setting. Therefore, the ALJ was required to demonstrate that Plaintiff's activities contradicted her other testimony in order to rely on her daily activities as a basis to not fully credit her testimony. *See Orn*, 495 F.3d at 639. The ALJ did not do so.

### 2. Plaintiff's Friends' Observations

The ALJ also erred in rejecting the lay witness testimony. While an ALJ need only provide "arguably germane reasons" for dismissing such testimony, *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), the sole reason the ALJ (and Defendant) provided for discounting that testimony is that it echoed Plaintiff's, which the ALJ found incredible. (R. at 25.) The Court has already found that the ALJ's rejection of Plaintiff's credibility

was error. Thus, the ALJ's sole reason for discounting the testimony is not a germane one.

### C. The Credit-As-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule which would result in remand of Plaintiff's case for payment of benefits rather than remand for further proceedings. (Pl.'s Br. at 19.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ fails to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

In this case, the ordinary remand rule applies. This case still involves evidentiary conflicts that must be resolved, particularly in light of this Court's determination that the ALJ erred in finding Plaintiff not credible and assigning little weight to the treating physician's opinion. Given these outstanding issues, it is evident that there is still uncertainty as to the outcome of the proceeding. Accordingly, the ordinary remand rule, not the credit-as-true rule, applies.

**IT IS THEREFORE ORDERED** reversing the February 14, 2014, decision of the Administrative Law Judge, (R. at 16-31), and remanding this matter for further proceedings consistent with this Order.

1    **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment
2    accordingly and close this matter.
3    Dated this 15th day of February, 2017.

Honorable John J. Tuchi
United States District Judge